UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JUVENAL CORVELO,

    Plaintiff,

    v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

    Defendant.

No. C 20-01059 WHA

**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this social security appeal, claimant appeals the termination of his disability benefits. Because the ALJ erred by rejecting all medical opinions regarding claimant's mental limitations, to the following extent, claimant's motion is **GRANTED** and this matter is **REMANDED** for further proceedings consistent with this order.

## STATEMENT

In a decision dated March 27, 2008, an administrative law judge (ALJ) found claimant entitled to Title XVI supplemental security income benefits with an onset date of February 14, 2006. Specifically, the ALJ found that claimant suffered from HIV positivity, sleep apnea, an adjustment disorder, methamphetamine abuse/dependence in remission since February 14, 2006, and a drug-induced mood disorder (AR 158–76).

Claimant received supplemental security income benefits until a continuing disability review determined, as of August 1, 2016, that claimant was no longer disabled (AR 201–06, 212–21). Claimant appealed that determination, which an ALJ affirmed in a decision dated December 20, 2018. Claimant requested administrative review, and the Appeals Council denied the request on December 5, 2019 (AR 1–3, 23–39). Claimant then filed this action seeking judicial review pursuant to Section 405(g) of Title 42 of the United State Code. The parties now cross-move for summary judgment.

### 1. CLAIMANT'S TESTIMONY.

Claimant, born in 1975 and age forty when found no longer disabled, met with several doctors for treatment and on the issue of his disability determination, submitted multiple disability reports, and testified in the hearing before the ALJ on the cessation of his benefits.

Claimant described his daily routine in a February 2016 continuing disability review report:

> [U]p at 7am, make bed, shower, dress, breakfast, take meds, go to church, prayer group/meditation, come home have lunch, take nap, prepare dinner, clean up, eat dinner, go for walk, go to a meeting, come home, watch tv, bedtime at 10pm

(AR 341–47). In the cessation-of-benefits hearing before the ALJ, claimant also described a bad day: "I'll wake up and I'll take my meds . . . . After that, it's back to bed" (AR 89–90). Claimant explained that this schedule was compelled by his deep physical and mental exhaustion as well as back and joint pain (AR 89–90.). He testified that his fatigue, joint pain, mood symptoms, and auditory hallucinations all have "progressively gotten worse" since 2006 (AR 95).

An HIV questionnaire dated May 4, 2016, which claimant filled out and which the ALJ cited extensively, explained that claimant took at least one two-to-three-hour nap per day. He also cooked three-to-four times a week, drove a car when he left the house, went to church daily, and cared for a pet. Claimant further stated in the questionnaire that he had problems getting along with others because "I have a mood disorder, people are dumb" (AR 354–58).

### 2.  MEDICAL EVIDENCE.

The administrative record contains medical records and opinions from several physicians. In social security disputes, our court of appeals classifies physicians as: (1) treating physicians, *i.e.*, doctors that have treated the claimant; (2) examining physicians, *i.e.*, consulting doctors that have not treated the claimant but have examined the claimant (usually once); and (3) non-examining physicians, *i.e.*, doctors that have neither treated nor examined the claimant but have reviewed the claimant's case file, and also medical advisors that testify as experts at social security hearings. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The administrative record herein contains opinions by two treating physicians, one examining physician, and five non-examining physicians.

*First*, treating physician Edward Brooks, M.D., treated claimant since he was diagnosed with HIV in 2004. A certified HIV specialist, Dr. Brooks stated in a 2017 letter to the Administration that claimant experienced fatigue and arthralgias (joint pain) due to chronic HIV (AR 928, 1705–06). In a November 2018 statement, he further opined that claimant experienced "daily fatigue that can fluctuate in severity, most days per week impairing his ability to complete all standard ADLs [activities of daily living]" (AR 1465). The ALJ reviewed Dr. Brooks' medical opinion:

> The undersigned finds the extreme functional limitations recommended by Dr. Brooks to be inconsistent with the relevant medical evidence of record since August 1, 2016, including reports of largely unremarkable physical examinations (See, e.g., Exhibit B7F at 11 and 23) and statements that the claimant's HIV infection is clinically stable (See, e.g., Exhibit B7F at 12 and 23). The record as a whole tends to support a finding that the claimant can perform a wide range of light work

(AR 35). The ALJ concluded: "[L]ittle weight is ascribed to the opinion of Dr. Brooks" (AR 35).

*Second*, treating physician Dr. Lawrence McGlynn, M.D., specialized in psychiatric treatment of HIV patients and treated claimant for over a decade (AR 927, 1705–07). In an October 2018 questionnaire, Dr. McGlynn diagnosed claimant with a "mood disorder, episodic, with psychotic features (HIV-Associated)" and attention deficit hyperactive

1  disorder (ADHD) (AR 1455). Dr. McGlynn explained that claimant has a "labile
2  [unpredictable] mood/affect," and that "when euthymic (normal mood), his speech is normal,
3  calm, peaceful. Thoughts at times goal directed, but at other times they are tangential and
4  reflected in rambling speech. Overall cooperative. Audiotry hallucinations present when his
5  mood is unstable" (AR 1456). In a November 2018 statement, Dr. McGlynn explained that
6  claimant's "presentation is fairly consistent. He can be loud and use profanities to describe his
7  experiences" (AR 1700).

Dr. McGlynn found claimant had: a mild limitation in understanding, remembering, or applying information; a "mild – extreme" limitation in interacting with others; a marked limitation in concentrating, persisting, or maintaining pace; and a marked limitation in adapting or managing oneself (AR 1457–58). Although Dr. McGlynn often noted claimant was "labile" he would also record claimant's affect as "normal" (*compare* AR 522, 774, 1231, 1498, *with* AR 1335, 1343, 1352, 1360, 1369, 1377, 1386). Dr. McGlynn also documented claimant's fatigue (*e.g.*, AR 1466, 1477, 1635). The ALJ reviewed Dr. McGlynn's opinion:

> The undersigned finds the extreme mental limitations and marked "paragraph B" criteria recommended by Dr. McGlynn to be inconsistent with those probative mental health records in evidence since August 1, 2016, including reports of largely unremarkable mental status examinations (See, e.g., Exhibit B8F at 65, 74, and 83)

(AR 34). The ALJ concluded: "[L]ittle weight is ascribed to the opinion of Dr. McGlynn" (AR 34).

*Third*, examining physician Charles DeBattista, M.D., conducted a consultative psychiatric examination of claimant on July 1, 2016. Dr. DeBattista opined, in relevant part, that claimant was: able to understand, remember, and carry out simple instructions but may have trouble with detailed instructions; mildly limited in interacting with coworkers and the public but not significantly limited in interacting with supervisors; moderately limited in maintaining concentration, attention, persistence, and pace; and not significantly limited in his ability to perform work-related activities without additional supervision (AR 733–37). The

4

ALJ afforded "little weight" to Dr. DeBattista's opinion because of other evidence in the record "of largely unremarkable mental status examinations" (AR 34).

*Fourth*, non-examining consulting physician Dr. C. Bullard, M.D., prepared a physical residual functional capacity (RFC) assessment on June 21, 2016. Dr. Bullard concluded that claimant could: occasionally lift fifty pounds; frequently lift twenty-five pounds; sit and stand or walk for six hours in an eight-hour workday; and push or pull an unlimited amount (AR 190–91). The ALJ did not cite this evaluation in his decision.

*Fifth*, non-examining consulting physicians E. Murillo, M.D., and K. Rudito, M.D., both performed physical RFC assessments of claimant on August 11, 2016, and March 8, 2017, respectively (AR 189–90, 919). Both reached similar conclusions to those of Dr. Bullard. The ALJ concluded: "The record as a whole tends to support a finding that the claimant is further limited to the performance of a wide range of light work. Therefore, the opinions of Dr. Murillo and Dr. Rudito are collectively afforded little weight" (AR 36). Dr. Murillo also performed a mental RFC assessment and found that claimant: mildly limited in activities of daily living; mildly limited in maintaining social functioning; and moderately limited in maintaining concentration, persistence or pace (AR 187, 191–93). The ALJ "afforded little weight" to this opinion, again because of claimant's "largely unremarkable mental status examinations" (AR 36).

*Sixth*, non-examining consulting physician Kathryn Econome, M.D., conducted a mental RFC assessment of claimant on March 7, 2017. Dr. Econome found claimant: moderately limited in his ability to understand, remember, or apply information; moderately limited in his ability to interact with others; moderately limited in his ability to concentrate, persist, or maintain pace; and mildly limited in adapting or managing oneself (AR 895–909). The ALJ stated:

> While the undersigned concurs that the claimant has some moderate mental limitations, the Administrative Law Judge finds the conclusions of Dr. Econome to be mostly inconsistent with those probative mental health records in evidence since August 1, 2016, including reports of largely unremarkable mental status examinations (See, e.g., Exhibit B8F at 65, 74, and 83)

5

1  (AR 37). The ALJ ascribed "little weight" to Dr. Econome's opinion (AR 37).

2  *Seventh*, non-examining physician Minh D. Vu, M.D., a board-certified internist and

3  pulmonologist, testified at the hearing on the cessation of claimant's disability benefits (AR

4  1326–33). As summarized by the ALJ:

> Dr. Vu stated that the claimant's HIV infection was stable based on his absolute CD4 count and a lack of opportunistic infections. He opined that the claimant did not have an impairment or combination of impairments meeting or medically equaling the severity requirements of listing 14.11 or any other listing described in 20 CFR Part 404, Subpart P, Appendix I. With regard to the claimant's residual functional capacity, Dr. Vu indicated that the claimant could perform the full range of light work

(AR 35). The ALJ, in contrast to his analysis of the other medical opinions in the record, determined:

> The undersigned finds Dr. Vu's opinion to be consistent with the relevant medical evidence of record since August 1, 2016, including reports of largely unremarkable physical examinations (See, e.g., Exhibit B7F at 11 and 23) and statements that the claimant's HIV infection is clinically stable (See, e.g., Exhibit B7F at 12 and 23).

(AR 35). The ALJ concluded, "For this reason and based on his status as a medical expert who is familiar with Social Security Administration rules and regulations, Dr. Vu's opinion is afforded great weight and has been adopted by the undersigned" (AR 35).

3.   **OTHER EVIDENCE.**

The testimony of lay witnesses Irene Sarmento and Nisha Fa is included in the record, both dated November 2018. Both are long-term friends of claimant. The ALJ gave these third-party statements little weight due to their inconsistency with the relevant medial evidence in the record (AR 32).

**ANALYSIS**

The Social Security Administration may terminate benefits for existing disability beneficiaries upon a finding that a claimant's condition has medically improved and the claimant is able to engage in substantial gainful activity. 42 U.S.C. § 423(f). An ALJ undertakes a multistep review when evaluating whether a claimant's disability benefits should

6

continue: (1) whether the claimant's impairments meet or equal any disability listing; (2) whether a medical improvement occurred; (3) if there has been a medical improvement, whether it is related to claimant's ability to work; (4) if there has been no medical improvement or if the improvement is unrelated to the claimant's ability to work, whether any of the exceptions to medical improvement apply; (5) if medical improvement related to the claimant's ability to do work is shown, whether any of claimant's current impairments in combination are severe; (6) what claimant's residual functional capacity (RFC) is and whether claimant can still do work they have previously performed; and (7) if claimant can no longer perform previous work, whether claimant can do other work. 20 C.F.R. § 416.994(b)(5).

A decision denying disability benefits must be upheld if it is supported by substantial evidence and free of legal error. *See Stout v. Comm'r Soc. Sec.*, 454 F.3d 1050, 1052 (9th Cir. 2006). "'Substantial evidence' means more than a scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). The reviewing court must "consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Ibid.* (cleaned up). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities," so when the evidence can reasonably support either affirming or reversing a decision, a reviewing court will defer to the judgment of the ALJ. *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

Claimant asserts the ALJ erred by: (1) rejecting all medical opinions regarding claimant's mental limitations; (2) failing to adequately support its rejection of the treating physicians' opinions on HIV-related chronic fatigue; (3) failing to consider symptom evidence provided by claimant; and (4) neglecting to consider claimant's medical condition through the date of the 2018 hearing.

1. **MEDICAL OPINIONS ON CLAIMANT'S MENTAL RESIDUAL FUNCTIONAL CAPACITY.**

Claimant argues the ALJ erred by rejecting the opinion of every physician in the record that provided an opinion on claimant's mental limitations (Br. 18). To evaluate a mental impairment in the cessation of benefits review procedure, the ALJ uses the special technique described in 20 C.F.R. Section 416.920a at each level of the administrative review process. *See Keyser v. Comm'r Soc. Sec.*, 648 F.3d 721, 725 (9th Cir. 2011) (summarizing special technique). Pursuant to the special technique, the ALJ makes specific findings as to the claimant's degree of limitation in each of four broad functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. Those functional areas are ranked on a five-point scale: None, mild, moderate, marked, and extreme. 20 C.F.R. § 416.920a(c). Additionally, "the mental RFC assessment used at steps 4 and 5 of the sequential evaluation process [steps 6 and 7 of the continuing disability review] requires a more detailed assessment." Social Security Rule (SSR) 96-8p.

Here, the ALJ recognized that claimant suffered from a mental impairment and found the claimant: mildly limited in understanding remembering or applying information; moderately limited in interacting with others; mildly limited in concentrating, persisting, or maintaining pace; and mildly limited in adapting or managing oneself (AR 28–29). Upon evaluation of claimant's mental RFC, the ALJ recognized the claimant had "some moderate mental limitations" and found he could have contact with the public on no more than an occasional basis (AR 30, 36).

The problem lies in the ALJ's rejection of all medical opinions on claimant's mental impairments, leaving none on which the ALJ could rest his conclusion. The record before the ALJ contained medical opinions from four doctors evaluating claimant's mental impairments: treating Dr. McGlynn; examining Dr. DeBattista; and non-examining consulting Drs. Murillo and Econome. The ALJ, however, rejected the opinions of *all* these doctors. To be clear, all of these doctors opined that claimant had a greater degree of mental impairment than the degree of impairment found by the ALJ. The only doctor whose opinion the ALJ did credit,

8

Dr. Vu, explicitly did not opine on claimant's mental impairments. At the hearing, the ALJ limited Dr. Vu's opinion to claimant's physical condition: "I'm not asking you [Dr. Vu] any questions and I won't ask you to speculate . . . regarding his [claimant's] mental condition" (AR 63).

The ALJ instead based his opinion on two pieces of medical evidence — claimant's self-reported HIV questionnaire and three progress reports from Dr. McGlynn (AR 28–29, 31–32, 34, 36–37). The HIV questionnaire (exhibit B7E) completed May 4, 2016, contained claimant's answers to general questions regarding his activities of daily living, social functioning, personal information, and work issues. The answers were brief, with many being one-word, yes/no responses (AR 354–60). The ALJ also cited three excerpts from exhibit B8F, specific mental status exams conducted by Dr. McGlynn, dated August 7, 2016, October 3, 2016, and October 19, 2016, respectively (AR 836, 845, 854). These three exams provide little context, and generally state, for example: "Mood: irritable and labile"; "Thought Process: normal"; "Sensorium: person, place and time/date"; "Judgment: limited."

Consequently, because the ALJ rejected every medical opinion regarding mental impairments he erroneously based his conclusion on claimant's mental limitations solely on his own lay interpretation of the raw medical evidence contained in claimant's treatment records. The ALJ, moreover, cherry-picked that medical evidence from ten pages of two exhibits. The ALJ relied on one of those exhibits — Dr. McGlynn's mental status exams — despite broadly discounting that doctor's opinion. Without a doctor's medical opinion to rely upon, this order finds the ALJ's findings on the severity of claimant's mental impairments (as defined by the special technique) and claimant's mental RFC assessment not supported by substantial evidence. *See Kelly v. Berryhill*, 732 Fed. App'x 558, 561 (9th Cir. 2018); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996); *Garcia v. Berryhill*, 2018 WL 1513688, at *2–3 (W.D. Tex. Mar. 27, 2018) (Judge Anne T. Berton); *Zazueta v. Colvin*, 2014 WL 4854575, at *5 (C.D. Cal. Sept. 29, 2014) (Judge Jacqueline Chooljian).

Having disregarded all the medical opinions on claimant's mental impairment in the record, if the ALJ believed the evidence was ambiguous or inadequate, he could have referred

1   claimant to a consulting expert to further clarify and develop the record. He did not do so. *See*
2   *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001); *Ferguson v. Schweiker*, 765 F.2d
3   31, 37 (3rd Cir. 1985).

4   In reply, the Acting Commissioner argues this was harmless error because "Dr. Murillo
5   opined [claimant] was able to remember, understand, and carry out simple, routine tasks and
6   retained the concentration and attention necessary to perform simple repetitive tasks . . . and,
7   this was exactly the type of work the ALJ found [claimant] capable of performing" (Opp. 23,
8   citing AR 39). An error is harmless when the reviewing court can "conclude from the record
9   that the ALJ would have reached the same result absent the error" or where it was clear the
10  error "did not alter the ALJ's decision." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir.
11  2012).

12  But as our court of appeals has "long held, 'We are constrained to review the reasons the
13  *ALJ* asserts.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (quoting *Connett v.
14  Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)) (emphasis in original). The ALJ explicitly
15  rejected Dr. Murillo's opinion, so this order cannot unilaterally adopt that opinion while
16  continuing to reject the other rejected medical opinions on claimant's mental limitations also in
17  the record. On remand, the ALJ shall properly address the medical opinions in the record on
18  claimant's mental limitations.

19  Because this order finds remand necessary because the ALJ committed reversible error
20  by rejecting all medical opinions regarding claimant's mental condition, it does not reach
21  claimant's additional contentions except insofar as to determine that a reversal and remand for
22  immediate payment of benefits would not be appropriate on such grounds. *See Dominguez v.
23  Colvin*, 808 F.3d 403, 407 (9th Cir. 2016). Upon remand, the ALJ may wish to consider
24  claimant's other contentions.

25  **2.    REMAND IS APPROPRIATE.**

26  A district court may either remand for further proceedings or credit as true testimony the
27  ALJ failed to adequately justify rejecting and order an immediate award of benefits.
28  Generally, when an order reverses an ALJ's decision, "the proper course, except in rare

circumstances, is to remand to the agency for additional investigation or explanation." *Ibid.* Indeed, it is the claimant who has the burden of proving disability. *Andrews*, 53 F.3d at 1040. Where "there are outstanding issues that must be resolved before a determination can be made, or if further administrative proceedings would be useful, a remand [for further proceedings] is necessary." *Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017).

Given the foregoing discussion, this order finds that further administrative proceedings would be useful.

**CONCLUSION**

To the foregoing extent, claimant's motion for summary judgment is **GRANTED**. Claimant's request for an immediate determination of benefits is **DENIED**, and this matter is **REMANDED** for further administrative proceedings consistent with this order. The Acting Commissioner's cross-motion for summary judgment is **DENIED**.

**IT IS SO ORDERED.**

Dated: April 21, 2022.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE